Filed 9/6/16  P. v. Rodriguez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TADEO SAUCIDO RODRIGUEZ,<br><br>    Defendant and Appellant. | F071994<br><br>(Super. Ct. No. BF156721A)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John V. Stroud, Judge.  (Retired Judge of the Sacramento Sup. Ct. assigned by the Chief Justice pursuant to article VI, § 6 of the Cal. Const.)

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Gomes, J. and Detjen, J.

Tadeo Saucido Rodriguez was convicted of second degree murder in the shooting death of Hector Leon.  The only evidence of the events that occurred on the night of the shooting came from an interview Rodriguez had with the investigating detectives.  In the interview, Rodriguez admitted he shot Leon, but claimed he did so in self-defense because Leon had been threatening to kill him for several hours.  Rodriguez argues defense counsel was ineffective because, when the interview was played for the jury, defense counsel did not insist the statement be redacted to exclude extraneous statements by the investigating detective.  We conclude defense counsel acted competently, and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

The information charged Rodriguez with the first degree murder (Pen. Code, § 187, subd. (a))[1] of Leon, and alleged as an enhancement that Rodriguez personally used a firearm within the meaning of section 12022.53, subdivision (d).

On September 9, 2009, at 2:12 a.m., Kern County Deputy Sheriff Augustine Moreno was dispatched to a location south of Bakersfield.  When he arrived, Moreno found Leon lying face down by a trailer.  Leon had what appeared to be a gunshot wound to the hand, and what appeared to be a gunshot wound to the back of the right knee.  Although Leon appeared to be alive when Moreno arrived, he died at the scene.

A deputy sheriff found a shotgun in a dirt field near where Leon was located.  The parties stipulated that Leon died of two gunshot wounds, and that at the time of his death he had alcohol and methamphetamine in his system.  The parties also stipulated that on August 21, 2014, the Kern County Sheriff's office received information that Rodriguez was working in a watermelon patch.  Deputy sheriffs proceeded to the location and arrested Rodriguez.

---

[1] Statutory references are to the Penal Code.

2.

Rodriguez was interviewed at the sheriff's office. The interview, which was played for the jury, was the last piece of evidence presented to the jury. Since the interview forms the basis of Rodriguez's argument to this court, we will summarize it in full during the discussion portion of this opinion. In brief, Rodriguez admitted he shot Leon, but claimed he did so in self-defense. Rodriguez stated Leon had been threatening his life, so at first he hid Leon's shotgun. When Leon continued to threaten him, Rodriguez went to retrieve the shotgun. Leon followed Rodriguez. Rodriguez then shot Leon in the hand. Another person staying with the group told Rodriguez he had better kill Leon because if he did not, Leon would kill Rodriguez. Rodriguez then shot Leon a second time as Leon walked away.

Since the only evidence about what led up to the shooting death of Leon was provided by Rodriguez during his interview, the closing argument of both attorneys focused on how the facts related by Rodriguez proved he was guilty of first degree murder (the prosecutor), or that he was not guilty because he acted in self-defense (defense counsel).

The jury found Rodriguez not guilty of first degree murder, but guilty of the lesser included offense of second degree murder. It also found the firearm enhancement true. Rodriguez was sentenced to the statutorily mandated term of 15 years to life for the murder, plus 25 years to life for the firearm enhancement, for a total term of 40 years to life.

DISCUSSION

As stated above, the only evidence of the events that took place on the night of the shooting was provided by Rodriguez in his interview with detectives from the Kern County Sheriff's office. The interview was conducted in Spanish. The investigating detective, Grantham, apparently did not speak Spanish, so another detective, Trevino, acted as an interpreter. During the interview, Grantham and Trevino would discuss the information provided by Rodriguez. As will be thoroughly discussed below, some of the

3.

comments made by Grantham suggested he believed Rodriguez was not being truthful, or were otherwise disparaging to Rodriguez. Rodriguez argues his attorney was ineffective because he failed to have these disparaging comments redacted.

*Standard of Review*

A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial. (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1036.) "Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.] [¶] Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. [Citation.] … Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or automatically validate challenged acts and omissions." (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

"If the record contains an explanation for the challenged aspect of counsel's representation, the reviewing court must determine 'whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate.' [Citation.] On the other hand, if the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation .…' " (*People v. Cudjo* (1993) 6 Cal.4th 585, 623.)

*The Interview*

With these concepts in mind, we turn to the interview. This interview, like many, involved new facts being discovered as the interview proceeded. We present the narrative in the same sequence as presented to the detectives by Rodriguez. The interview commenced with the detectives obtaining fingerprints, DNA, and background information from Rodriguez. Rodriguez was read his rights and stated he understood those rights.

When the interview turned to the events in question, Rodriguez explained he lived in a trailer with his brother, Leon, and two other men.[2] A man (Beto) and a woman (Maria) lived in a second trailer on the property. On the day in question, Leon threatened to kill Rodriguez, and Rodriguez did not know what to do. Apparently, Beto became upset because he believed Leon had some type of relationship with Maria. Leon blamed Rodriguez for telling Beto that Leon was talking with Maria.[3] The three had been drinking beer, smoking crystal methamphetamine, and smoking marijuana.

Leon had a shotgun in the trailer. After Leon threatened Rodriguez two or three times, Rodriguez went with Beto and Maria to retrieve Leon's shotgun. Rodriguez put it in his brother's pickup truck, but Leon apparently followed him when he did so, repeatedly telling Rodriguez he was going to kill him. This went on the entire afternoon. Rodriguez at one point apparently locked himself in his room to avoid Leon.

After placing the shotgun inside the pickup, Rodriguez and Beto returned to the trailer. Beto and Leon apparently began arguing again. Leon again threatened to kill Rodriguez, so Rodriguez went out to the pickup, grabbed the shotgun, and asked Leon

---

[2] NOTE: Rodriguez spoke in Spanish during the interview. Grantham spoke English. Trevino spoke Spanish when he spoke with Rodriguez, and English when he spoke with Grantham. The entire interview has been translated into English, so the transcript appears to suggest Trevino is unnecessarily repeating himself, when he is actually translating for Grantham.

[3] It is unclear what relationship, if any, Leon had with Maria.

how he was going to kill him. Leon approached Rodriguez saying that Rodriguez was "a worthless piece of shit, faggot," and that he was going to kill Rodriguez. As Leon approached, Rodriguez shot Leon two times. Rodriguez thought Leon was going to take the shotgun away from him and kill him. Rodriguez admitted Leon was unarmed, but asserted Leon had come to take the shotgun from Rodriguez so that Leon could kill him. Rodriguez explained that after the first shot, Beto told him he had better kill Leon, or Leon would kill Rodriguez.

At about this point, Trevino explains to Grantham the story provided by Rodriguez, and the two (and a third unidentified individual) discussed what issues needed to be clarified.

Trevino began by confirming that Leon had been threatening Rodriguez only on the day of the shooting. Rodriguez also confirmed that before that day he and Leon had been friends, but whatever happened between Beto, Maria, and Leon caused Leon to turn against Rodriguez. They had not had any problems before that day.

Trevino asked why Rodriguez did not hit Leon with the shotgun, and Rodriguez again stated he thought Leon would take the shotgun away and hit him. In response to a question, Rodriguez said he did not want to have a fistfight with Leon because Leon was too big, and he apparently felt Leon would kill him if they fought. Rodriguez said he was sorry he killed Leon, but he felt he did not have any choice.

At Grantham's direction, Trevino asked Rodriguez to clarify what happened between the first and second shots. Rodriguez said that after the first shot, Leon said "you hit me." That is when Beto yelled at him to shoot Leon again. Leon did not threaten him after the first shot, nor was Leon approaching Rodriguez. Rodriguez again stated he shot Leon a second time because Beto told him to, or else Leon would kill Rodriguez. When asked if Rodriguez thought it was proper to have shot Leon a second time under these circumstances, Rodriguez stated it was not proper. He also admitted the

6.

second shot was not in self-defense, but he did not know what to do and Beto was yelling at him to shoot Leon again.

When the topic changed to Rodriguez's actions after the shooting, Rodriguez confirmed that he thought he was defending himself, but he decided to run away. Later he said he was sorry he did not stay and explain what happened.

Rodriguez thought the first shot hit Leon in the stomach area. He thought Leon was eight to twelve feet from him when he fired the first shot. When Rodriguez fired the second shot, Leon was 16 to 24 feet away. Rodriguez did not know where the second shot hit Leon. Rodriguez admitted Leon turned away from him after the first shot. Rodriguez was upset with Leon because Leon had threatened to kill him and his brother if his brother said anything once Leon murdered Rodriguez.

After he shot Leon, Rodriguez ran to some grape fields in the back of the trailers and hid until the next day. He threw the shotgun away. He then found a ride to Mexico. Rodriguez admitted he heard Leon had died. He did not report his actions to the police because he was scared.

At this time, Grantham made the first comment to which Rodriguez objects, a statement made by Grantham to Trevino.

"Grantham: I don't – I don't – and I don't – here's the thing, I don't believe him. I don't think he took that gun to hide it from [Leon]. I think he took [Leon's] gun to kill [Leon] with it."

In response to this statement, Trevino and the third man in the interview suggested they clarify Leon's movements between the first and second shots. Trevino confirmed that before the first shot Leon was walking towards Rodriguez. Rodriguez also explained that after the first shot Leon turned and began walking away from him, and Rodriguez shot while Leon was facing away from him.

After Trevino explained to Grantham Rodriguez's statement, Grantham made the second comment to which Rodriguez objects.

7.

"Grantham:    He's in control of the gun.  Not Beto. Okay, Well that's  …."

Grantham then had Trevino review pictures of the scene with Rodriguez, and confirm the positioning of the parties when the shots were fired, and clarified some points in Rodriguez's statement.  At this point Grantham made the comments which form the third basis for Rodriguez's objections.

"Grantham:    Here's what does make sense to me, okay?  The gun's in his brother's truck.  [Leon] doesn't know where the gun's at.  He's pissed off at [Leon].  He goes to get the gun 'cause [Leon's] done all that to him.  He goes and gets that gun and [Leon] comes outside and he shoots [Leon] because him – because [Leon's] been talkin' shit to him was what was really goin' on.

"Trevino:       Okay and that's what I'm tryin' to clear up with him right now, um ….

"Grantham:    Because [Leon] never knew where the gun was at so [Leon] would have never known to go [to] his brother's truck and get the gun out of the back of the truck because he said [he] hid it from [Leon] so [Leon] wouldn't get it.  So [Leon] has no idea that the gun's in the back of the truck behind the seat so he goes out, he gets the gun and loads the gun. [Leon] comes outside and he shoots [Leon].  That's the real story."

Grantham then asked Trevino to clarify why Rodriguez felt compelled to retrieve the shotgun if Leon did not know where Rodriguez had hidden it.  Rodriguez explained that Leon was inside the trailer with Rodriguez when Rodriguez retrieved the shotgun, which had been stored in Rodriguez's bedroom (Leon had been sleeping on the couch in the living room).  Rodriguez attempted to sneak outside with the shotgun so he could hide it, but Leon apparently heard him going outside and followed.  When Rodriguez went back inside the trailer, Leon followed.  It appears that Beto and Leon began arguing

8.

again, which is when Rodriguez went back outside to retrieve the shotgun from the pickup. At this point, Grantham makes the fourth statement to which Rodriguez objects.

"Grantham:    Okay. 'Cause he's coming with the gun to kill [Leon]."

Trevino then attempted to clarify whether Rodriguez believed Leon saw Rodriguez hide the shotgun in the pickup truck. Rodriguez stated he was unsure. Trevino then returned to Rodriguez's reason for leaving the trailer to retrieve the shotgun after it had been hidden in the pickup. Rodriguez said he retrieved the shotgun because Leon said he was going to kill Rodriguez, which made Rodriguez angry. Rodriguez eventually admitted that when he left the trailer to retrieve the shotgun he had decided to kill Leon because of Leon's repeated threats to Rodriguez's life. Rodriguez backtracked slightly shortly thereafter by saying that if Leon had not followed him out of the trailer he would have merely disposed of the shotgun.

After this exchange, Grantham made the fifth set of comments to which Rodriguez objects.

"Grantham:    If he wasn't intending on shooting the guy he would have never taken the shotgun shells. He just woulda hid the gun and left the shotgun shells in the room where it was at.

"Trevino:      Right.

"Grantham:    Doesn't make any sense to take the gun and the shotgun shells together 'cause you – one's not bein' without the other."

Trevino then attempted to clarify whether the shotgun was loaded when Rodriguez hid it in the pickup. Rodriguez explained he put the shells into his pocket when he hid the shotgun. Grantham replied that Rodriguez's reasoning made sense. Grantham then made the final comment to which Rodriguez objects.

"Grantham:    I haven't seen a bit of emotion from him throughout the entire thing other than angriness. Not remorse whatsoever for what happened. So, that's one opinion."

9.

The interview concluded shortly after this comment.

*Discussion*

As explained above, Rodriguez argues these comments disparaged him, and his attorney was ineffective because the comments could have been easily redacted from the interview without affecting the flow of the interview. Rodriguez continues that there is no possible explanation for not redacting the statements, and that any reasonable defense attorney would have done so. His attorney's failure to do so was an action that fell below the standard of conduct of a reasonable, competent attorney. Moreover, according to Rodriguez, the failure to redact the statements caused sufficient prejudice to require reversal of the judgment. We disagree.

The first prong of the ineffective assistance of counsel analysis is whether defense counsel's conduct fell below an objective standard of reasonableness. Where, as here, defense counsel was not asked for an explanation of his decision to not redact the statements from the interview, we will not conclude defense counsel was ineffective unless there could be no satisfactory explanation for the decision.

While Rodriguez asserts this is such a case, we disagree. Grantham's statements were not so outrageous that defense counsel would automatically want them redacted. Instead, these statements for the most part demonstrated Grantham's analysis of the story presented by Rodriguez. As the interview continued, Rodriguez's story continued to evolve with additional facts and explanations. While there may well have been grounds for redacting the statements, defense counsel could have concluded that Grantham's comments raised the same concerns the jury would have, and it was better to leave the comments in to demonstrate how Rodriguez responded to the concerns. Moreover, after several of Grantham's comments Rodriguez clarified issues which demonstrated Grantham's comments were based on incomplete information. Defense counsel stressed in closing argument that Rodriguez was completely truthful during the interview, and the jury should find he honestly believed he had to kill Leon or else Leon would kill him. By

10.

leaving Grantham's statements in the interview, and of course Rodriguez's responses to the follow up questions, defense counsel could logically conclude the jury would be more likely to conclude Rodriguez was truthful.

Again, we emphasize that the statements were not so outrageous that any counsel would want them redacted. We will now analyze these statements individually, to demonstrate not only that they were not outrageous, but also to show it is not reasonably probable Rodriguez would have obtained a better result had the statements been redacted.

The first statement to which Rodriguez objects was Grantham's statement that he believed that Rodriguez was lying about hiding the shotgun, and Rodriguez actually hid the shotgun so he could kill Leon. After this comment was made, Rodriguez more fully explained that he hid the shotgun for his own protection, a position with which Grantham appeared to agree. Grantham's objectionable statement actually appears to be a reflection of an incomplete understanding of Rodriguez's statement, rather than an indictment of Rodriguez's veracity.

Moreover, we emphasize that neither the prosecutor nor defense counsel suggested in closing argument that Rodriguez hid the gun so he could later kill Leon, or that the events transpired in any way other than as explained by Rodriguez. Instead, the focus was on Rodriguez's state of mind when he killed Leon, and the inferences that should be drawn from the facts provided by Rodriguez. Accordingly, it is unlikely the fact that Grantham did not initially believe Rodriguez had any effect on the verdict.

The second statement to which Rodriguez objects was Grantham's comment that Rodriguez had control of the shotgun, and not Beto or Leon. This is nothing more than an observation of the facts as explained by Rodriguez. To the extent it could be interpreted as suggesting that because Rodriguez had control over the shotgun, he was the one who killed Leon, this fact was undisputed, and admitted by Rodriguez throughout the interview. If Rodriguez is suggesting the statement was Grantham's opinion that Rodriguez was guilty of murder, we think the interpretation is unreasonable. Taken in

11.

context, the statement would appear to reflect Grantham's belief that even though Beto told Rodriguez to shoot Leon a second time, it was Rodriguez's decision to do so because Rodriguez had control over the gun. Once again, this is the only logical conclusion that could be reached from the facts presented by Rodriguez. Moreover, Rodriguez admitted that once Leon followed him out of the trailer when Rodriguez left to retrieve the shotgun, Rodriguez decided to kill him. This was not an area of significance to either attorney, and was not a focus of the closing arguments.

The third set of comments to which Rodriguez objects was Grantham's summary of his belief of how the events transpired that night. Grantham stated, in essence, that when Rodriguez left the trailer to retrieve the shotgun, he had decided to kill Leon because Leon had been threatening him all afternoon. As the interview proceeded, Rodriguez admitted that is exactly what happened, with the slight proviso that if Leon would not have followed Rodriguez out of the trailer, Rodriguez would simply have disposed of the shotgun. Moreover, Rodriguez admitted he was angry with Leon when he left the trailer. Grantham's comments could not have caused Rodriguez any prejudice because Grantham's analysis was virtually identical to Rodriguez's story.

The fourth statement to which Rodriguez objects was Grantham's comment that when Rodriguez went to the pickup to retrieve the shotgun, he was doing so to kill Leon. This was Grantham's opinion about Rodriguez's motivation for retrieving the shotgun. However, later in the interview Rodriguez admitted his motivation when he retrieved the shotgun was to kill Leon. Once again, we fail to see how Grantham's statement could have prejudiced Rodriguez when it was virtually identical to Rodriguez's statement.

The fifth statement to which Rodriguez objects was Grantham's discussion with Trevino wherein Grantham stated that if Rodriguez did not intend to shoot Leon, he would have left the shotgun shells in the bedroom, and hid only the unloaded shotgun. Trevino immediately thereafter clarified with Rodriguez that before Rodriguez hid the shotgun, Rodriguez had removed the shells and placed them in his pocket. Accordingly,

12.

Rodriguez's testimony aided his defense because it established that, according to Grantham's reasoning, when Rodriguez hid the shotgun he did not intend to shoot Leon. We fail to see any possible prejudice from Grantham's statement when Rodriguez clarified that he hid an unloaded shotgun.

The sixth and final statement to which Rodriguez objects was Grantham's observation that the only emotion he observed Rodriguez exhibit during the interview was anger, and Rodriguez did not express remorse. We fail to see any possible prejudice from this statement for several reasons. First, the jury could intuit whatever emotions Rodriguez demonstrated during the interview for themselves, and in fact were encouraged to do so by defense counsel during closing argument. Second, the interview occurred over four years after the shooting, thus making obvious demonstrations of emotion less likely. Third, Rodriguez stated in the interview that he was sorry for what had occurred, but emphasized he did not feel he had any options. Fourth, whether Rodriguez was emotional during the interview was not a significant issue. The facts were fully laid out by Rodriguez in the interview. The issue was Rodriguez's mental state when he shot Leon, not whether he was emotional about the shooting four years after it occurred.

Three additional points should be made when discussing prejudice. First, Grantham concluded the interview by instructing Trevino to thank Rodriguez for being honest with the officers. This statement suggests that after Grantham had elicited all the details from Rodriguez, Grantham believed Rodriguez had been truthful. Thus, any potential prejudice from Grantham's earlier comments that Rodriguez was lying was greatly diminished.

Second, the trial court specifically instructed the jury to disregard Grantham's comments. The instruction read, "In the recorded interview, Detective Grantham made various statements and gave various opinions. Those statements and opinions are not evidence, and should not be considered by the jury as such." Although the record does

13.

not indicate who requested this instruction, logically one would expect defense counsel to do so. This inference leads to two conclusions. First, defense counsel recognized that Grantham's comments were objectionable, but as a matter of trial tactics decided to have the entire interview played for the jury. Second, defense counsel was satisfied with the wording, and felt the jury was adequately instructed on this issue.

Rodriguez now asserts the instruction could have been worded more strongly, such as instructing the jury Grantham's statements should not be considered by the jury for any purpose. While perhaps such wording may have been ideal, the instruction as given was more than adequate to inform the jury to disregard Grantham's statements.

Third, neither party referred to Grantham's comments at any time during closing and rebuttal arguments. As stated earlier, the attorneys focused on Rodriguez's mental state, and whether he acted in self-defense. The arguments focused on Rodriguez's description of the events, and the inferences which could be drawn from those events. Grantham's statements were not mentioned by either attorney.

To summarize our conclusions, trial counsel's failure to insist Rodriguez's statement be redacted to eliminate Grantham's statements did not fall below the standard of a reasonably competent defense attorney because there was a logical reason for not redacting the statement, i.e., because defense counsel reasonably could conclude the statement without redactions would provide more support for the defense presented at trial. Moreover, the comments did not cause Rodriguez any discernable prejudice, and certainly did not rise to the level that it is likely a more favorable outcome would have been reached had the statements been redacted.

DISPOSITION

The judgment is affirmed.

14.